(5 App. Div. 276.)

KOCH v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    May 15, 1896.)

1. POLICE JUSTICE—TERM OF OFFICE—POWER TO TERMINATE.
    Laws 1895, c. 601, which abolishes the office of police justice in New York City, does not violate Const. 1895, art. 6, § 22, providing that "local judicial officers" (which designation includes police justices) in office when the article takes effect shall hold their offices until the expiration of their respective terms.[1]

2. APPEALABLE ORDERS—DECISION ON DEMURRER.
    An order sustaining a demurrer is not appealable.

Appeal from special term, New York county.

Action by Joseph Koch against the mayor, aldermen, and commonalty of the city of New York, to recover three months' salary alleged to be due plaintiff as a police justice of the city of New York. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

George Hoadly, for appellant.
Joseph H. Choate, for respondents.

INGRAHAM, J. The sole question presented in this case is whether chapter 601 of the Laws of 1895, so far as it attempts to end the term of the plaintiff as a police justice of the city of New

[1] See, also, People v. Hogan (Sup.) 35 N. Y. Supp. 226; Keating v. Fitch, Id. 641; In re Quinn (Sup.) 36 N. Y. Supp. 894.

York, is in conflict with section 22, art. 6, of the constitution. The constitution went into effect on the 1st day of January, 1895, and at that time the plaintiff was one of the police justices of the city of New York, having been appointed for a new term on the 4th day of January, 1893. By section 1544 of the consolidation act it was provided that, where a police justice was appointed for a new term, such term should be 10 years. The police justices in the city of New York were magistrates, justices of the court of special sessions, justices of the police courts, and members of the board of police justices, with certain powers and duties specifically regulated by law. Consolidation Act, §§ 1542, 1544, 1546, 1550, 1572. By section 22 of article 6 of the constitution, which went into effect on the 1st day of January, 1895, it is provided that:

"Justices of the peace and other local judicial officers, provided for in sections seventeen and eighteen, in office when this article takes effect, shall hold their offices until the expiration of their respective terms."

On the 10th day of May, 1895, the legislature passed an act entitled "An act in relation to inferior courts of criminal jurisdiction in the city and county of New York." By the first section of that act it was provided that:

"From and after midnight of the 30th day of June, 1895, the office of police justice in the city and county of New York is abolished, and all power, authority, duties and jurisdiction then vested in the police justices in the said city and county of New York, and in the courts held by them, including the court of special sessions, and in the board of police justices, and in the clerks, deputy clerks, police clerks' assistants, and in all other officers and employees of said justices or courts, or of the board of police justices, shall cease and determine."

The appellant insists that this section of the act, in so far as it declares that the office of police justice, and the courts in which such police justices presided, are abolished, is in violation of section 22 of article 6 of the constitution, as under that section he was entitled to hold his office as a police justice until the expiration of the term for which he was appointed, namely, until the 4th day of January, 1903.

In aproaching the determination of a question involving the validity of an action of the legislature, the fact that we are dealing with provisions limiting power should always be kept in mind; and the power of the legislature as the lawmaking power of the state should be recognized as subject to no bounds, except such as are plainly imposed by the provisions of the constitution. The legislature is not given specific power by the constitution. The general grant of legislative power vests in it all the lawmaking power of the state, except so far as express provisions of the constitution restrict such power. The office of police justice, and courts over which these police justices were appointed to preside, are created and exist by the act of the legislature. The existence of the courts and the duration of the terms of the justices are subject to its will, and unless, by the provisions of the constitution, imposed by express words, or created by necessary implication, neither the power to remove them from office or to abolish their courts during their unex-

pired terms of office is limited. Article 6 of the constitution, in which is contained the section relied upon by the plaintiff, relates to the organization of the courts, and provides for the administration of justice; and we must view this article as a whole to determine just how far it was intended to restrict the legislature in its control over the various courts and judicial officers by whom justice was to be administered. To take one section by itself, dissociating it from the remainder of the article, and not considering it as part of the general system established, would be liable to give us an erroneous idea of the real meaning intended to be expressed by such a provision.

We can see, from the article in question, that the various courts of the state were divided into two distinct classes. In one class were placed certain courts established by the constitution itself, and the jurisdiction to be exercised by them was prescribed. The election of the judges to preside in them was provided for. And thus, over such courts and their continuance, and the judges elected to preside in them, the legislature, under the lawmaking power vested in it, had no control. On the other hand, the existence of a class of courts not included within that specified was recognized as having been created by legislative enactment, and the existence of which depended upon such laws; and provision was made for the creation of other courts not provided for by the constitution in case public interests should so require. But over such courts, the organization of which was not expressly provided for by the constitution, whether in existence at the time of the adoption of the constitution, or to be thereafter created by the legislature, there is no intimation of an intention to limit in any way the legislative control. The power of the legislature to establish additional courts was expressly given, the power of the legislature to abolish those courts then in existence which should subsequently become unnecessary, or which the public interest should require should be abolished or changed, was not in the slightest degree interfered with; clearly recognizing, we think, the intention to leave the continuance or abolition of all such courts subject to the authority and control of the legislature. The surrogate courts, which had, prior to the adoption of the constitution, been subject to the control of the legislature, were considered proper courts to be embraced with those established by the constitution; and the provisions that were deemed necessary in such a case are illustrated by the provision of section 15, which provides for surrogates' courts and the surrogates in office at the time of the adoption of the constitution. There the provision is that the existing "surrogates' courts are continued, and the surrogates now in office shall hold their offices until the expiration of their terms. Their successors shall be chosen by the electors of their respective counties, and their terms of office shall be six years, except in the county of New York, where they shall continue to be fourteen years." The intention in regard to surrogates' courts is thus clear. Henceforward they were to be taken from the class subject to the control of the legislature, and the continuance of the courts, the terms of the surrogates, and the election of their successors were expressly provided for

by the constitution, so that neither could be changed by the legislature. Another class of judicial officers was also expressly provided for. By section 17 of this article it was provided that the electors of the several towns should elect justices of the peace "whose term of office shall be four years," thus placing justices of the peace in a class by themselves; and, while providing for their election and the term of their office, leaving it to the legislature to direct the time and manner of their election, and their number and classification.

The constitution thus provided for the organization of such courts and the election of such judicial officers as should be placed in the class of those who should be considered a part of the permanent judicial system of the state, to be subject to no change except by a constitutional amendment; but, as before stated, the existence of other courts was recognized, and certain provisions were made for the regulation and removal of judicial officers then existing under the authority of the legislature, or which were thereafter to be created by the legislature. By section 18 of this article, the legislature was authorized to establish inferior local courts of civil and criminal jurisdiction, with a provision that the legislature should not thereafter confer upon any inferior or local courts of its creation any equity jurisdiction, or any greater jurisdiction in other respects than is conferred upon county courts; and it is then provided that, "except as herein otherwise provided, all judicial officers shall be elected or appointed at such times and in such manner as the legislature may direct." We thus see clearly the system established. Certain courts and the judges to preside therein were expressly established by the constitution, and under its provisions the people were authorized to elect the judges for a definite term, which could only be curtailed by removal from office as therein provided. Such courts receive their power direct from the constitution, and the judges were selected by the people, under its authority, to preside in such courts. All other courts not within this class were left entirely within the control of the legislature, and all judicial officers whose election had been provided for by the legislature continued to receive their power to act from the legislative enactment.

The police courts of the city of New York, and the courts of special sessions of the city of New York, were included within this class. They existed by virtue of the legislative enactment. The legislature had the power to say how the judges of those courts or the police justices of the city of New York should be elected or appointed. Such courts could continue only so long as the law authorizing their continuance remained in force; and the moment the legislature repealed the act establishing any one of such courts the existence of the court and the term of the justices holding such courts came to an end. It would be absurd to say that the term of a judge of a court could continue after the court itself had ceased to exist; and the existence of the court, and the length of the term of the judge who was to hold it, thus being expressly left within the control of the legislature, we are prepared to say just what was intended by the provision of section 22. And here it should also be noticed that the provisions of the constitution had curtailed the pow-

er of the legislature to establish local courts. Under the constitution as it existed prior to the adoption of the present consritution, the legislature had power to establish courts in addition to those expressly provided for by the constitution, and to give such courts unlimited jurisdiction in law and equity; and several courts were in existence, established by the legislature, which are courts of record, one example of which is the city court of New York. It was not the intention of the constitution to abolish those courts, or to raise any question as to their continuance. That was to be left to the legislature. And so it was provided, in section 22, that:

"Justices of the peace and other local judicial officers provided for in sections seventeen and eighteen, in office when this article takes effect, shall hold their offices until the expiration of their respective terms."

These provisions apply to justices of the peace, whose election has been expressly provided for by the constitution, and whose terms were there fixed. It applied to other local judicial officers who were then in office; and when it said that they should continue in office until the expiration of their respective terms, it seems to us that it was intended merely to continue them until their term should end; and that term could end as well by the abolition of the office, or the abolition of the court, by the exercise of the legislative power, which had not been limited, as by the expiration of the period designated in the statute providing for their appointment as the time for which their term should continue. We think it clear that the expiration of the term was here used in connection with the power of the legislature either to abolish the court or the office, and then end the term for which such judicial officers had been originally appointed. The construction sought to be given to this act by the plaintiff would have created the anomaly of continuing all judicial officers of these inferior courts at the time of the adoption of the constitution as a class by themselves, preventing their removal or the abolition of their courts for the period during which they would have held the office in the absence of legislative interference, but leaving their successors subject to the will of the legislature, so that a court in existence at the time of the adoption of the constitution could not be abolished as long as the term of a single one of its judges in office at the time when this constitution went into effect continued, thus creating by implication a class of constitutional courts, for a limited period, which would not be subject to legislative control. We do not think a fair construction of the language used, taking this article 6 of the constitution as a whole, requires us to adopt this construction.

We think, therefore, that the act of 1895, before mentioned, is clearly constitutional, and that the plaintiff's right to his office, and right to receive any salary from the city of New York, ended on the midnight of the 30th day of June, 1895, and that no cause of action was alleged in the complaint. It follows, therefore, that the judgment appealed from must be affirmed, with costs.

There seems to be, also, an appeal from the order sustaining the demurrer. As there is no appeal from such an order, that appeal must be dismissed. All concur.